EDWARD T. CROWE, as Executor of NORA G. HAGGERTY, Deceased, Appellant, v. FLORA SCHULMAN, as Executrix of HARRY LE ROY SCHULMAN, Deceased, Respondent.

Second Department, June 26, 1961.

*Stanley Shapiro* of counsel (*Delukey & Shapiro,* attorneys), for appellant.

*Besse E. Kessler* of counsel (*Siegel, Sommers & Schwartz,* attorneys), for respondent.

CHRIST, J. A stipulation, and a concession made at the trial, limit the issue to a single question: Was the tenant a statutory tenant of the subject office suite, in a building in Brooklyn, under the Emergency Business Space Rent Control Law (L. 1945, ch. 314, as amd.).

The tenant took possession of the space, known as suite 402, in the Fall of 1950, under a lease executed in July of that year. Up to that time he had been a statutory tenant of a different office suite, on the sixth floor in the same building.

Section 12 of the Emergency Business Space Rent Control Law (L. 1945, ch. 314, as amd. by L. 1952, ch. 417) provides that the act is inapplicable to business space which had been vacated by a tenant, or to business space demised under a lease or sublease executed subsequent to March 31, 1950, "to a person not in possession at the time of the execution thereof." If this provision of section 12 were applicable literally, the issue would unquestionably have to be determined in favor of the landlord. However, since there are situations in which it may be proper to construe the provision as not depriving a tenant of his status as a statutory tenant because of his prior status as such with respect to other space in the same building (cf. *Matter of Capone* v. *Weaver,* 6 N Y 2d 307; see *Syndicate*

*Bldg. Corp.* v. *Hide Trading Corp.*, 13 Misc 2d 473, revg. 12 Misc 2d 134; *Carmel Co.* v. *Greater Buffalo Press*, 10 Misc 2d 514, affd. 10 Misc 2d 464; *Lincoln Bldg. Associates* v. *Henry*, 10 Misc 2d 507), we proceed to summarize the evidence.

Early in 1950, the landlord importuned the tenant to move from the sixth floor space, so that he could rerent it, together with other space on the sixth floor, to a prospective tenant. The tenant rejected one suite offered by the landlord, but finally agreed to the space which is the subject of this proceeding, suite 402.

A new lease was drawn and executed by the landlord and the tenant. It provided for a five-year term commencing on October 1, 1950, with an option to the tenant to extend the term for an additional three years. The landlord further agreed, on the tenant's demand, to the inclusion in the lease of provisions which, generally stated, are to the effect that the landlord at his expense would: partition and redecorate the suite; redecorate it again during a stated period about midway during the five-year term; install three air conditioners, linoleum, an acoustical ceiling in one private office, six fluorescent lighting fixtures, window blinds, door transoms, electrical sockets and outlets, closets and radiators; wall-up a certain door space; move the tenant's furniture and library to the suite; reletter the outer door; remove four electrical fixtures; conceal all electrical wiring; transfer the tenant's three leather covered doors to the suite; reimburse the tenant for relocation of telephone equipment; and do periodic cleaning, waxing and polishing work.

The area of the former sixth-floor suite had been about 1,600 square feet, and for that suite the tenant had been paying a rental of $143.75 a month or at the rate of $1.08 a foot. The area of suite 402 was about 1,200 square feet, and the annual rental for it, as stated in the lease, was $2,400 a year for the first two and a half years and $2,700 a year for the remainder of the term, including the option period, or at the rates of about $2 and $2.25 a foot, respectively.

The landlord testified that he had agreed to the furnishing of the above-mentioned equipment and services to the tenant, as set forth in the lease, because he would be getting more than $2 a foot in rental from a tenant who had been paying only $1 a foot, and because the tenant was willing to commit himself to a five-year term. As a result of the tenant's relocation, the landlord was enabled to enter into a lease with the new prospective tenant for space which included part of the space that

had been formerly occupied by the subject tenant, at or about $2 a square foot.

*Matter of Capone* v. *Weaver* (6 N Y 2d 307, *supra*) involved housing accommodations, and was decided under paragraph (h) of subdivision 2 of section 2 of the Emergency Housing Rent Control Law (L. 1946, ch. 274, as amd.), which is comparable to the statutory provision presently in question. That proceeding was to review the State Rent Administrator's approval of a Local Rent Administrator's order fixing the maximum rent of an apartment on the basis of the apartment being rent controlled under the applicable statute. The tenant was relocated from a rent controlled apartment into another apartment in the same building, exchanging apartments with his landlord, in pursuance of the terms of a condition of a certificate which had been issued by the Rent Administrator for his eviction from the former apartment. Under a literal reading of paragraph (h) of the statute, the tenant's new apartment would have been decontrolled by the renting to him, since the renting to the tenant of the landlord's former apartment took place after the governing date in that paragraph of the statute. The Court of Appeals held (pp. 309, 310): (1) that the statute should not be read literally; (2) that it should be read as applicable only if the exchange of apartments had been made '' wholly voluntary ''; (3) that '' [u]nder the circumstances of this case '' it could not be said that the tenant had given up his rent controlled apartment voluntarily; and (4) that the determination of the Rent Administrator to the effect that '' the exchange was for the benefit and advantage of the landlord to relieve a hardship '' and that the tenant did not lose his rights as a statutory tenant in the relocation, was reasonable and therefore should not have been annulled.

*Syndicate Bldg. Corp.* v. *Hide Trading Corp.* (13 Misc 2d 473, *supra*) was a proceeding like the instant one, for summary recovery of business space to which a tenant had been relocated in 1952 from other space in the same building, in which other space he had been a statutory tenant. The court expressly refrained from passing on the question of whether section 12 of the Emergency Business Space Rent Control Law (L. 1945, ch. 314, as amd.) should be read literally. Giving the tenant the benefit of a construction that it should not be so read for the purpose of the case, the court held (p. 474): (1) that such a construction in any event should be '' limited to such instances where the new tenancy in all fairness could be said to be a substitution for the former tenancy ''; (2) that under the facts

of the case that was not so; and (3) that therefore the new space was decontrolled. The court had found that the former space "greatly exceeded" the new space; that at the time of the exchange the rental of the former was $6,300 and of the latter $2,400; and that "[a] graduated rental replaced the original terms."

In our opinion, the tenant in the instant case voluntarily exchanged the spaces in question. There was no legal remedy available to the landlord to force the tenant into making the exchange, such as was the case in *Matter of Capone* v. *Weaver* (6 N Y 2d 307, *supra*). Indeed, here the tenant rejected the first suite that was offered to him, exacted divers valuable items of equipment and services from the landlord in consideration for the exchange, and, in the interests of securing his tenure, exacted an option to continue his tenancy after the five-year term of the lease. There were substantial differences in the size of the former space and in the size of the new space, and in the rental amounts.

Under the circumstances, whether section 12 should be read literally or as indicated in *Matter of Capone* v. *Weaver* (*supra*) and in *Syndicate Bldg. Corp.* v. *Hide Trading Corp.* (13 Misc 2d 473, *supra*), it should be held here that the subject space was decontrolled. Factually inapposite are *Carmel Co.* v. *Greater Buffalo Press* (10 Misc 2d 514, *supra*) and *Lincoln Bldg. Associates* v. *Henry* (10 Misc 2d 507, *supra*).

The order of Appellate Term and the final order of the Municipal Court of the City of New York should be reversed, on the law and the facts, with costs, and the proceeding should be remitted to the Municipal Court for further action not inconsistent with the views herein expressed.

Findings of fact inconsistent herewith should be reversed, and new findings of fact should be made as indicated herein.

NOLAN, P. J., UGHETTA, KLEINFELD and BRENNAN, JJ., concur.

Order of the Appellate Term and final order of the Municipal Court reversed on the law and the facts, with costs, and proceeding remitted to the Municipal Court for further action not inconsistent with the views expressed in the opinion herein. Findings of fact inconsistent with the opinion are reversed, and new findings of fact are made as indicated therein.